

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
    **JUDGE**

## LETTER OPINION

December 6, 2007

Steven Gaechter
58 Main Street
Hackensack, NJ 07601
    (*Attorney for Plaintiff*)

Amy R. Covert
Proskauer Rose, LLP
One Newark Center
18th Floor
Newark, NJ 07102-5211
    (*Attorney for Defendants*)

    Re:    *Witte v. Connecticut General Life Ins. Co., et al.*
                Civil Action No. 06-2755 (WJM)

Dear Litigants:

    This matter comes before the Court on Plaintiff's and Defendants' cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56.  There was no oral argument.  Fed. R. Civ. P. 78.  For the reasons set forth below, both Plaintiff's and Defendants' motions for summary judgment are granted in part and denied in part.

**I.    BACKGROUND[1]**

    Plaintiff, Donald Witte, was employed as an "Own Brands Sourcing Manager" for The Great Atlantic & Pacific Tea Company, Inc. ("A&P") from June 2001 until May 26, 2004.  Plaintiff had been undergoing treatment for his cardiac-related health conditions

---

[1] The following facts are not in dispute.

since 1980 and had been hospitalized repeatedly between 1982 and 2004.  In April 2004, Plaintiff required cardiac catheterization and complained of continuing chest pains and shortness of breath.  According to Plaintiff, he ceased working on May 26, 2004 due to worsening symptoms related to his heart condition.

On November 11, 2004, Plaintiff made a benefits claim under A&P's Long Term Disability Plan (the "Plan"), a self-funded employee benefits plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  The Plan provides for monthly disability payments after 180 consecutive days of total disability.[2]  During the initial two-year period for which long term disability benefits are payable, the Summary Plan Document for the Plan defines "total disability" as being "unable to perform any and all duties of your job."  (Lodi Decl. Ex. A D0087).  This disability determination must be "certified by a physician and approved by the claims administrator before benefits are paid."  (Murphy Decl. Ex. A D0657.)

The Plan designates A&P, Corporate Benefits Department, as the plan administrator and Connecticut General Life Insurance Company (hereinafter "CIGNA") as the claims administrator.  (Lodi Decl. Ex. A D0098.)  As the plan administrator, the Corporate Benefits Department "manages the day-to-day operation of the Plan and has the sole and final authority to interpret the Plan provisions, decide questions that arise in connection with the administration of the Plan, and review any denials of claims for benefits."  (Lodi Decl. Ex. A D0098.)  The Plan delegates the review of claims to the claims administrator, CIGNA, who must (1) approve the physician who certifies a claimant's "total disability," and (2) approve a claimant's disability.  (Lodi Decl. Ex. A D0089.)

Plaintiff's claim for disability benefits was denied by the claims administrator, CIGNA, on February 1, 2005.  CIGNA determined that the medical records offered by Plaintiff did not support his claim that he was unable to perform his duties as a sourcing manager–a job that CIGNA described as sedentary work.  CIGNA stated that their decision was based upon CIGNA's review of Plaintiff's claim file and the opinion of their reviewing physician, who found that the "medical deficits are not supported by clinical evidence."  (Lodi Decl. Ex. A D0517.)

Thereafter, Plaintiff submitted an appeal of the denial along with additional medical documentation.  On October 15, 2005, CIGNA affirmed the denial of benefits based on an Independent Peer Review by Dr. Paul W. Sweeney (a non-examining

---

[2] Plaintiff claims that he was "totally disabled" from May 26, 2004 through at least November 23, 2004 and met the requisite 180-day disability period.

physician consultant), who concluded that Plaintiff could resume his work as sourcing manager.  CIGNA further stated that it could not identify the acuteness of Plaintiff's cardiac condition or loss of function severe enough to preclude him from performing his job as a sourcing manager.  CIGNA indicated that they would entertain another appeal and invited Plaintiff to submit additional documentation.

After a change of attorneys, Plaintiff provided additional documentation to CIGNA including, among others, a cardiac functional capacity assessment completed by Plaintiff's treating physician, Dr. Gregory F. Sullivan, and an affidavit from Plaintiff describing the requirements of his job as Sourcing Manager at A&P.  On May 24, 2006, CIGNA upheld its denial of benefits.  CIGNA stated that Plaintiff's complete file was reviewed in "its entirety without deference to prior reviews," but also noted that the additional information submitted by Plaintiff duplicated the information previously reviewed. (Lodi Decl. Ex. A D0101.)  Therefore, CIGNA considered this additional information insufficient to change their previous determination.  All administrative remedies, as mandated in 29 U.S.C. § 1133, have been exhausted.

Plaintiff filed this ERISA suit against CIGNA, A&P, and the A&P, Long Term Disability Plan on June 19, 2006, alleging improper denial of disability benefits.  Plaintiff seeks review of Defendants' denial of long term disability benefits and an award of disability benefits starting from the period of total disability in May 20, 2004 as well as interest, court costs, and attorney's fees.  Plaintiff's and Defendants' cross-motions for summary judgment are now before the Court.

## II.    DISCUSSION

The Court's review of CIGNA's denial of long term disability benefits involves a determination under ERISA.  *See Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 573 (3d Cir. 2006)("every claim for relief involving an ERISA plan must be analyzed within the framework of ERISA").  Against this statutory framework, the Court considers the parties' cross-motions for summary judgment.

### A.    Summary Judgment Standard

A court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of showing that no genuine issue of material fact exists rests initially on the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A litigant may discharge this burden

by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### B. **Plaintiff's Motion for Summary Judgment**

As this case involves a review of a denial of benefits under ERISA, the Court first undertakes a consideration of the relevant standard of review. Courts customarily review an ERISA benefits decision de novo. *See Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 111 (1989). If, however, the employee benefits plan grants discretionary authority to the plan administrator in determining eligibility benefits, the denial of such benefits is reviewed under an arbitrary and capricious standard. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 390 (3d Cir. 2000)(interpreting *Firestone*). If the benefit plan gives discretion to an administrator operating under a conflict of interest, courts must modify the traditional arbitrary and capricious standard to account for that conflict. *Id.* This modified arbitrary and capricious review is a sliding scale review that is a "range, not a point . . . [ ] more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion." *Pinto*, 214 F.3d at 392-93.

The contours of this sliding scale review were laid out in *Post v. Hartford Ins. Co.*, 501 F.3d 154 (3d Cir. 2007). *Post* directs courts to consider any evidence that the administrator acted from an improper motive, including evidence of structural conflicts of interest or evidence of bias based on procedural factors, and heighten its scrutiny as appropriate. *Id.* at 161-62. Then, courts are to review "the merits of the decision and the evidence of impropriety together to determine whether the administrator properly excercised the discretion accorded it." *Id*. at 162. If the administrator properly exercised its discretion, courts must affirm the decision. *Id*. If the administrator's decision was an abuse of discretion, the court steps "into the shoes of the administrator and rules on the merits itself." *Id*.

In this case, both parties agree that the Court should apply the arbitrary and capricious standard of review because the Plan grants the administrator discretionary authority to determine eligibility for benefits.  Neither party, however, argues that any structural or procedural factors evidence an improper motive, which would warrant heightening this Court's arbitrary and capricious review.[3]  Therefore, the Court applies an unmodified arbitrary and capricious standard in its review of CIGNA's denial of benefits.

Applying this deferential standard, the Court's inquiry is to determine whether CIGNA's conclusion that Plaintiff was able to perform any and all duties of his job as Own Brands Sourcing Manager for the relevant period was "without reason, unsupported by the evidence or erroneous as a matter of law."  *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 41 (3d Cir. 1993).  Under the ERISA framework, the Court must look to the administrative record as a whole, or in other words, the evidence that was before CIGNA when CIGNA made its final decision to deny Plaintiff's claim for benefits.  *See Post,* 501 F.3d at 168-69*; Kosiba v. Merck & Co.*, 384 F.3d 58, 67 (3d Cir. 2004).

Plaintiff contends that looking at the record as a whole, CIGNA's denial of his disability benefits was arbitrary and capricious, because (1)  Defendants failed to consider Plaintiff's affidavit regarding the functional and exertional requirements of his job as Own Brands Sourcing Manager and improperly characterized Plaintiff's job as "sedentary" work, and (2) Defendants ignored uncontroverted medical evidence of disability from Plaintiff's treating physician.  These arguments are addressed in turn below.

                1.       *Sedentary Work*

Plaintiff argues that CIGNA's denial of benefits was arbitrary and capricious, because CIGNA failed to consider the specific functional and exertional requirements of his job at A&P.  Plaintiff correctly points out that CIGNA was constrained by the terms of the Plan and was required to assess whether he was able to perform "any and all duties of" his actual job at A&P and not whether he was able to perform similar jobs or jobs with similar titles and tasks.  Since CIGNA's determination regarding the sedentary nature of Plaintiff's job was based upon evidence of the functional and exertional requirements of similar jobs, as opposed to Plaintiff's particular job as Sourcing Manager at A&P, CIGNA's denial was an abuse of the administrator's discretion.

---

[3]  The Court recognizes that this case, with additional facts regarding the funding structure of the Plan or evidence of procedural bias, could require some heightening of its review.  The facts as provided by the parties, however, are insufficient to establish any structural or procedural factors requiring any form of heightened arbitrary and capricious review.

The administrative record suggests that CIGNA considered evidence regarding the requirements of Plaintiff's job from three sources. First, CIGNA reviewed A&P's job description of Plaintiff's position as Sourcing Manager. A&P stated that an Own Brands Sourcing Manager "is responsible for vendor selection and validation based on quality, cost, and service specific to the needs of the product category and A&P." (Lodi Decl. Ex. A D0593.) Although A&P provides more specific details, its description of Plaintiff's job focuses on the responsibilities and duties of the position as opposed to the exertional and functional requirements of the job. (Lodi Decl. Ex. A D0593.)

Then, CIGNA chose a job title from the Department of Labor's Dictionary of Occupational Titles ("DOT") based upon a comparable O*Net[4] description of tasks.[5] (Lodi Decl. Ex. A D0545-46.) O*Net describes "Manager, Customer Technical Sales" as directing and coordinating sales distribution and quality assurance. (Lodi Decl. Ex. A D0546.) The DOT lists "Manager, Customer Technical Services" as involving sedentary work. (Lodi Decl. Ex. A D0545.) Sedentary work, according to the DOT, requires lifting, carrying, pushing, and pulling ten pounds occasionally and sitting with brief periods of standing or walking. (Lodi Decl. Ex. A D0545.)

CIGNA additionally considered Plaintiff's detailed affidavit regarding the exertional requirements of his job. In stark contrast to the DOT and O*Net descriptions of sedentary work, Plaintiff's affidavit states that Plaintiff was required to occasional lift boxes weighing fifty pounds and frequently lift boxes and product samples weighing up to thirty pounds. (Lodi Decl. Ex. A D0191-93.) Plaintiff also described various trade shows that he was required to travel to and attend as Own Brands Sourcing Manager. (Lodi Decl. Ex. A D0193-95.) During these seasonal shows, he recalls standing for durations of three and eight hours and lifting boxes weighing up to thirty-five pounds. (Lodi Decl. Ex. A D0193-95.) Clearly, the requirements of Plaintiff's job, as articulated by Plaintiff through his affidavit, is far above that required for sedentary work.

In reviewing the evidence, CIGNA determined that Plaintiff's affidavit was self-serving and not as reliable as the evidence gathered from A&P, DOT, and O*Net. (Defs.' Opp. Br. 7-8.) Thus, CIGNA concluded that Plaintiff's job was sedentary, and its

---

[4] O*Net is an occupational information internet resource developed for the U.S. Department of Labor. *See* O*Net OnLine, http://online.onetcenter.org/ (last visited December 5, 2007).

[5] Although Defendants have not provided the exact rationale for why this particular job title was chosen, the Court assumes that this job title was chosen for its similarity in tasks to the description of tasks provided by A&P.

subsequent medical evaluations of whether Plaintiff was able to perform "any and all duties of [his] job" assumed that Plaintiff's job was sedentary.

It is clear to this Court that CIGNA misinterpreted the terms of the Plan. The plain language of the Plan requires CIGNA to assess whether Plaintiff was able to perform any and all duties of his job, not other similar jobs or jobs that had similar duties and responsibilities. CIGNA's reliance on the DOT and O*Net descriptions of the sedentary nature of similarly tasked jobs, without some consideration regarding the actual functional and physical requirements of Plaintiff's specific position at A&P, clearly contravenes the plain language of the Plan. *See e.g.*, *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381, 385-86 (3d Cir. 2003)(equating a plan's language requiring an assessment of "his/her regular occupation" as the usual work that the insured was actually performing immediately prior to the onset of disability). Thus, CIGNA erred in concluding that Plaintiff's job was sedentary without examining evidence regarding the actual level of work required to perform Plaintiff's job. CIGNA further erred in discrediting Plaintiff's affidavit regarding his work without any contrary evidence.

To be clear, the Court recognizes that the deference given to an administrator's denial of benefits under arbitrary and capricious review favors affirmation of the decision if there is evidence supporting both the claimant and the administrator, and the administrator's decision is reasonable. *See Stratton v. E.I. Dupont de Nemours & Co.*, 363 F.3d 250, 258 (3d Cir. 2004)(finding that a "professional disagreement does not amount to an arbitrary refusal to credit" reliable evidence). In this case, however, CIGNA relies on, essentially, irrelevant evidence to support its position that Plaintiff's job is sedentary. The description provided by A&P neither assists, nor detracts, from a conclusion regarding the exertional or functional requirements of Plaintiff's job. The exertional and functional requirements listed in the DOT/O*Net are merely relevant to jobs that are similar in tasks to Plaintiff's job. What is missing is evidence linking these two descriptions to an accurate description of Plaintiff's job at A&P. If, for example, an A&P employee with knowledge regarding the requirements of Plaintiff's job had attested to the accurateness of the DOT/O*Net description, the Court would likely have been required to affirm CIGNA's denial of benefits.

Based on the current record, there is no relevant evidence, other than Plaintiff's affidavit, regarding the functional and physical requirements of his job at A&P as Brand Sourcing Manager. To the extent that CIGNA misinterpreted the terms of the Plan and credited irrelevant evidence, while discrediting relevant evidence, the Court finds that CIGNA's denial of benefits to Plaintiff was arbitrary and capricious.

    2.    *Additional Medical Evidence*

7

Plaintiff additionally argues that there is no indication that "CIGNA considered, reviewed, or even read the detailed [Cardiac] Functional Capacity Report authored by the Plaintiff's treating cardiologist [Dr. Sullivan]" and submitted on March 8, 2006.  (Pl.'s Br. 13.)  In the absence of a clear review of this medical opinion or an independent examination, Plaintiff concludes that the submitted medical opinion of his treating physician was uncontroverted; and thus, CIGNA's refusal to credit Plaintiff's submitted medical evidence without a contrary medical opinion was arbitrary and capricious.  (Pl.'s Reply Br. 5-7.)

Under the ERISA framework, plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  Plan administrators, however, need not give treating physicians more weight than non-treating physicians. *Id*.  Thus, plan administrators may properly credit one physician's professional opinion over another physician's contrary professional opinion without being viewed as arbitrarily refusing to credit reliable medical evidence.  *See Stratton*, 363 F.3d at 258.  Additionally, when plan administrators credit reliable evidence that conflicts with a treating physician's evaluation, courts may not impose "on plan administrators a discrete burden of explanation."  *Black and Decker Disability Plan*, 538 U.S. at 834.

In the instant case, there are two competing medical assessments of Plaintiff's functional capacity: (1) Dr. Sullivan's medical opinion regarding Plaintiff's inability to return to work, and (2) CIGNA's reviewing physicians' determinations that Plaintiff could perform sedentary work.  In a Physical Ability Assessment completed in December 29, 2007, Dr. Sullivan determined that Plaintiff could: (1) continuously sit; (2) occasionally stand, walk, and reach; (3) frequently engage in fine manipulation and simple grasping; (4) occasionally engage in firm grasping; (5) occasionally lift, carry, push, and pull ten pounds, but never anything heavier; (6) occasionally climb stairs, kneel, crouch, and crawl; (7) never climb ladders; (8) never work extended shifts/overtime; (9) occasionally be exposed to brief periods of extreme heat/cold/humid conditions; and (10) occasionally use lower extremities for foot controls.  (Lodi Decl. Ex. A D0148-49.)  According to Dr. Sullivan, these limitations precluded Plaintiff from returning to full-time work.  (Lodi Decl. Ex. A D0528.)

Dr. Sweeney, after reviewing Dr. Sullivan's Physical Ability Assessment as well as other medical records submitted by Plaintiff, concluded that the "claimant's cardiac conditions appear to have been stable around May 27, 2004," and the "Restrictions and Limitations provided by Dr. G. Sullivan are not supported by the available medical documentation."  (Lodi Decl. Ex. A D0232.)  Although Dr. Sweeney did not provide a listing of the full extent of Plaintiff's functional limitations, he further determined that

8

Plaintiff was able to perform the requirements of his "sedentary occupation." (Lodi Decl. Ex. A D0232.) In support of his analysis, Dr. Sweeney pointed to stress studies submitted in connection with Plaintiff's application for benefits from February 2004 through August 11, 2005 to support his conclusions. (Lodi Decl. Ex. A D0232.) CIGNA's own internal reviewing physician also concluded based on Plaintiff's contemporaneous medical tests that the "medical deficits are not supported by clinical evidence." (Lodi Decl. Ex. A D0523.)

Upon CIGNA's invitation to provide "specific limitations and restrictions to your abilities that may have been placed by any of your physicians since May 27, 2004," Plaintiff submitted further medical documentation including a "Cardiac Residual Functional Capacity Questionnaire" by Dr. Sullivan. (Lodi Decl. Ex. A D0201.) In evaluating Plaintiff's cardiac residual functional capacity from May 27, 2004 through November 27, 2004, Dr. Sullivan reported that Plaintiff experienced chest and anginal equivalent pain, shortness of breath, palpitations, and dizziness and concluded that Plaintiff had a marked limitation of physical activity. (Lodi Decl. Ex. A D0201.) Dr. Sullivan's report further stated that Plaintiff could: (1) sit for thirty minutes at one time before needing to get up; (2) stand for thirty minutes before needing to sit down, walk around, etc.; (3) occasionally lift and carry less than ten pounds, but never anything heavier; (5) frequently twist; (6) occasionally stoop, crouch, and climb stairs; (7) never climb ladders; (7) avoid all exposure to extreme cold and heat, wetness, and humidity; (8) avoid concentrated exposure to fumes, odors, gases, dust, and poor ventilation; and (9) avoid concentrated exposure to hazards. (Lodi Decl. Ex. A D0203-0204.) Dr. Sullivan also noted the need for Plaintiff to take daily, unscheduled fifteen minute breaks. (Lodi Decl. Ex. A D0203.) He estimated that Plaintiff would likely need to be absent from work more than four days per month as a result of Plaintiff's impairment or treatment. (Lodi Decl. Ex. A D0204.)

Although it is clear that CIGNA could properly chose to credit its own physician's opinion and Dr. Sweeney's opinion – concluding that a review of Plaintiff's medical file and tests did not support the severity of limitations described by Dr. Sullivan – over Dr. Sullivan's opinion, CIGNA could not arbitrarily refuse to credit Dr. Sullivan's medical opinion as laid forth in the Cardiac Residual Functional Capacity Questionnaire if there was no contrary medical opinion. Thus, the issue remains whether CIGNA improperly ignored the additional medical information submitted by Plaintiff after reviews conducted by CIGNA's physician and Dr. Sweeney.

CIGNA argues, unconvincingly, that it could discredit Dr. Sullivan's later opinion because: (1) it had completed a full review of Plaintiff's file "in its entirety without deference to prior reviews;" and (2) the additional information submitted was "duplicate

9

information previously reviewed." (Lodi Decl. Ex. A D0101.) The Court first notes that CIGNA has not clarified whether persons with sufficient medical expertise conducted the file review to ensure that the additional medical evidence did not alter the prior medical opinions of CIGNA's reviewing physician and Dr. Sweeney. Second, as articulated earlier, CIGNA's reliance on its reviewing physicians' opinions are flawed to the extent that they assume that Plaintiff's job is sedentary – a fact that has not yet been properly developed by the record. Finally, the Court is not entirely convinced that Dr. Sullivan's cardiac functional capacity report was duplicate information. It would be imprudent to credit CIGNA's contrary medical opinion over Dr. Sullivan's medical opinion, when it is unclear from the record that the additional medical information supplied by Dr. Sullivan regarding the extent and nature of Plaintiff's condition was reviewed by a person with sufficient medical knowledge to determine whether such information was duplicate information. For example, part of Dr. Sweeney's report concludes that "claimant's palpitations have not resulted in complaints of dizziness, presyncope or syncope." (Lodi Decl. Ex. A D0232.) Yet, Dr. Sullivan's cardiac functional capacity report states that Plaintiff experiences "dizziness." (Lodi Decl. Ex. A D0201.)

Without speculating on the credibility of CIGNA's assertions that a full and fair review was conducted after Plaintiff's additional submissions of March 8, 2006, the Court cannot conclude that substantial evidence supports CIGNA's denial of benefits based upon the record. Since the Court is unable to determine whether the reports of CIGNA's reviewing physicians provided reliable evidence that conflicted with the treating physician's report, the Court finds that CIGNA's denial of long-term disability benefits was arbitrary and capricious.[6]

### C.     Defendants' Motion for Summary Judgment

Defendants in their cross-motion for summary judgment argue that CIGNA's denial of disability benefits is supported by substantial evidence. Much of the discussion mirrors the arguments addressed above in Plaintiff's motion for summary judgment. As CIGNA failed to consider the specific requirements of Plaintiff's job and may have failed to appropriately consider the medical opinion of Plaintiff's treating physician, CIGNA's

---

[6] The Court notes that CIGNA's preoccupation with the medical cause of Plaintiff's worsening condition or the catalyst for Plaintiff's change in condition is misguided. Even if Plaintiff continued to work despite his physician's opinions to the contrary, such evidence would not be dispositive of his disability status. *See e.g.*, *Lasser*, 344 F.3d at 392 ("a claimant's return to work is not dispositive of his or her disability when economic necessity compels him or her to return to work"). Furthermore, the terms of the Plan do not require such a determination. The Plan merely requires that Plaintiff is "totally disabled," meaning "unable to perform any and all duties of your job." Thus, CIGNA's inquiry should be limited to whether or not Plaintiff is unable to perform his job for the requisite 180-day period.

decision to deny benefits was not supported by substantial evidence and was clear error under the terms of the Plan.

### D.     Appropriate Remedy

As CIGNA misinterpreted the terms of the Plan in reviewing Plaintiff's application, the Court must determine the appropriate remedy. Anticipating this Court's findings, Defendants seek, in the alternative, remand to the claims administrator for a reconsideration of Plaintiff's benefit claim.  Plaintiff opposes the remand remedy and argues that such a remedy is appropriate only where the court concludes that the record is incomplete.  Since both parties have represented that the record is complete, Plaintiff asserts that the only appropriate remedy in this case is reversal of the administrator's denial of benefits. Furthermore, Plaintiff argues that since his affidavit and Dr. Sullivan's cardiac functional capacity report were uncontroverted, the Court should adopt Dr. Sullivan's conclusion that Plaintiff is unable to perform his job and is therefore totally disabled under the Plan.

Where an administrator's decision to deny benefits was arbitrary and capricious, one clear remedy is to reverse the administrator's decision and award benefits.  Courts may additionally remand the claim to the administrator under a variety of circumstances. *See e.g.*, *Smathers v. Multi-Tool, Inc.*, 298 F.3d 191, 200 (3d Cir. 2002)(remanding a case to the administrator when the administrator "misperceived its task"); *Orr v. Metropolitan Life Ins. Co.*, No. 04-557, 2007 U.S. Dist. LEXIS 67855, *55 (M.D. Pa. September 13, 2007)(remanding a case where the administrator refused to credit reliable medical evidence); *Molders v. New Jersey Educ. Assoc. Pruprotect Plan*, No. 05-1747, 2006 U.S. Dist. LEXIS 48996, *11-12 (D.N.J. July 18, 2006)(where an administrator's decision to deny benefits was arbitrary and capricious, a court may remand the case or retroactively award benefits); *Woodbury v. American Home Prod. Corp.*, 285 F. Supp. 2d 544, 551 (D.N.J. 2003)(where an administrator misperceives his task, a court must remand for a proper consideration by the administrator).  Although the Court is cognizant that a remand may further delay disability benefits for ultimately successful plaintiffs, it cannot conclude, as Plaintiff urges, that the record in this case can only reasonably support a conclusion that Plaintiff qualifies for disability benefits under the Plan.

In its review of Plaintiff's claim, CIGNA misinterpreted the plain terms of the Plan by failing to consider the specific requirements of Plaintiff's job. On remand, CIGNA is instructed to consider evidence regarding the actual requirements of Plaintiff's position as Sourcing Manager at A&P.  Whether CIGNA's reviewing doctors' medical opinions remain reliable evidence in opposition to Dr. Sullivan's opinion will only become apparent after CIGNA appropriately considers the functional and exertional requirements

of Plaintiff's job at A&P.  Furthermore, CIGNA is instructed to elaborate on its review of Plaintiffs medical submissions of March 8, 2006.

Despite this Court's finding that CIGNA's decision to deny Plaintiff long term disability benefits was arbitrary and capricious based on the current administrative record, the Court cannot determine Plaintiff's rights to these benefits under the terms of the Plan without a further development of the record.  Thus, it is appropriate for this Court to remand this case to the claims administrator.

### III.	CONCLUSION

After consideration of the parties' submissions, the Court will **deny Defendants'** motion for summary judgment affirming the claim administrator's denial of benefits, and **grant Plaintiff's** motion for summary judgment as to the arbitrary and capricious nature of Defendants' denial of benefits.  In granting Plaintiff's motion, however, the Court will deny Plaintiff's motion to the extent that it seeks an award of benefits from this Court.  The Court will grant Defendants' alternative motion for a **remand to the claims administrator, CIGNA,** for a reconsideration of Plaintiff's claim consistent with this Letter Opinion.

s/William J. Martini

**William J. Martini, U.S.D.J.**